UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

KRISTA FRANCES SELIG,

                Debtor.

Case No. 8-17-70042-reg
Chapter 7

-------------------------------------------------------------X
JP MORGAN CHASE BANK, NA

                Plaintiff,

v.

Adversary Proceeding No.
8-17-08107-reg

KRISTA FRANCES SELIG,

                Defendant.
-------------------------------------------------------------X

**MEMORANDUM DECISION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

### I.    Introduction

In this action to determine whether a debt is non-dischargeable pursuant to sections 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code, JP Morgan Chase Bank ("the Plaintiff") moves for summary judgment against the Defendant-Debtor Krista Frances Selig (the "Defendant" or the "Debtor").

The debt arises from a judgment entered prepetition in New Jersey State Superior Court ("State Court") in the amount of $2,684,682.79 plus treble damages against the Debtor in connection with a mortgage fraud scheme in which the Debtor, her law firm and others participated. The State Court relied in part on a prior guilty plea by the Debtor of conspiracy to commit theft in the third degree to find the Debtor liable under the New Jersey RICO statute.

The Debtor freely acknowledges that the Plaintiff obtained a judgment against her in excess of $8 million, but, she claims she is responsible for no more than $75,000. The Debtor argues that her guilty plea in the criminal action was an admission of liability of no more than $75,000. In the alternative, the Debtor argues that it would be inequitable to saddle her with such a significant non-dischargeable debt due to her alleged peripheral involvement in the fraudulent scheme.

Under the doctrine of *res judicata*, the Court must give the State Court judgment full faith and credit in the entire amount of $8,054,048.10. *Res judicata* and collateral estoppel preclude the Defendant from litigating whether the judgment debt should be reduced based on factors raised by the Defendant in the instant proceeding.

As a result of her plea in the criminal action, which served as the basis for the State Court judgment, the Debtor cannot challenge that she conspired to commit theft against the Plaintiff. Pursuant to the findings made by the State Court, the Debtor cannot challenge that she was found to have been involved in an enterprise for the purposes of carrying out a scheme to defraud the Plaintiff. The record in the case includes the criminal indictment and the Debtor's plea, along with the transcript of the civil hearing. After reviewing the entire record carefully, the Court finds there is sufficient evidence to conclude at the summary judgment stage that the Defendant's actions constituted larceny and the debt is non-dischargeable under § 523(a)(4). The Debtor's admission of conspiracy to commit theft, which is a willful and malicious act, also renders the judgment non-dischargeable under § 523(a)(6). However, there are material issues of fact in dispute regarding the Debtor's actual conduct and representations which preclude granting summary judgment in favor of the Plaintiff with respect to the first cause of action under § 523(a)(2)(A). For the reasons set forth more fully below, the Court grants the Plaintiff's motion

for summary judgment under § 523(a)(4) and 523(a)(6). Summary judgment is denied under § 523(a)(2)(A), but no hearing shall be held on this cause of action in light of the disposition of the second and third causes of action.

**Facts**

On September 16, 2010, the Plaintiff initiated a civil action against the Debtor and others, seeking several million dollars in damages. According to the State Court complaint, the Plaintiff and Hawthorne Capital Corp. ("Hawthorne) entered into an agreement for Hawthorne to originate and sell residential mortgage loans to the Plaintiff. Under the terms of the agreement, upon the Plaintiff's purchase of a mortgage loan, Hawthorne was to use the funds from the Plaintiff to cancel existing prior mortgages and satisfy all other existing liens. The Plaintiff would then obtain a first mortgage lien position on the property. However, Hawthorne and the Hawthorne Defendants diverted the funds earmarked for the refinancing closings for their own benefit. As a result of this scheme, many of the mortgage loans purchased by the Plaintiff were not secured by perfected liens and were not first liens. While the Defendant was not a principal of Hawthorne, she was listed as a closing agent for Hawthorne in New Jersey. (Affidavit in Opposition to Motion for Summary Judgment, Ex. C, p. 3).

In the State Court complaint, the Debtor was named as a defendant in the seventh count under the New Jersey RICO statutes, which includes one or more of the following crimes - theft, identity theft, forgery, fraud misapplication of entrusted property, money laundering and making false or misleading statement for the purpose of obtaining property or credit. In addition, the State Court complaint contains allegations that the Debtor and others used income derived from the racketeering activities. On December 7, 2010, defaults were entered on the record as to Hawthorne Capital, Hawthorne Abstract, John Kosta and Silvano Tropeano.

On June 27, 2011, after the State Court action was commenced, the Defendant was indicted for her involvement in the scheme to defraud the Plaintiff, and charged with conspiracy to commit theft. On March 29, 2012, the Defendant pleaded guilty to conspiracy to commit theft in the third degree. She was sentenced to one (1) year of probation in exchange for her assistance with the prosecution of the other criminal defendants.

In the State Court action the court granted the Plaintiff's motion to strike the answers of certain of the Hawthorne Defendants, including the Debtor. Thereafter, the Plaintiff filed a motion for default judgment with respect to each count of the complaint. An order was entered on August 22, 2016 granting judgment by default. A hearing to determine liability and damages was held on November 30, 2016, at which the Debtor failed to appear. At the hearing, an employee in the Plaintiff's mortgage banking forensic department testified regarding the agreement between the Plaintiff and Hawthorne. According to the employee's testimony, because Hawthorne did not pay off the existing mortgage loans, the Plaintiff was not in first lien position on the properties, the borrowers did not obtain the benefit of the refinance transaction, and the Plaintiff was constrained to write off the loans. (Motion for Summary Judgment, Ex. D, p. 21). The Plaintiff also introduced documentary evidence regarding each of the mortgage loans that the Plaintiff charged off due to the misconduct of the Hawthorne Defendants. (Motion for Summary Judgment, Ex. D, p. 33 – 46). At the conclusion of the hearing, the State Court concluded that the proof against Hawthorne was overwhelming. The State Court also concluded that the parties were "involved in a scheme to defraud plaintiff, Chase. The scheme involved obtaining mortgage proceeds from Chase and failing to pay off the existing mortgages or to use the funds as it was represented that they would be used." (Motion for Summary Judgment, Ex. D., p. 55). However, as for the Defendant, the Court required additional support to connect her

criminal indictment and guilty plea to the causes of action against her in the State Court action. *Id.* By letter dated December 16, 2016, the Plaintiff submitted additional proof to the State Court regarding the Defendant's criminal action. The additional proof consisted of the Plea Form and Memorandum of Understanding between the Debtor and the Monmouth County Prosecutor's Office. (Motion for Summary Judgment, Ex. E). On November 30, 2016, judgment was entered against the Debtor and the other Hawthorne Defendants in the amount of $2,684,682.79, plus treble damages. (Motion for Summary Judgment, Ex. F). Final disposition was entered on March 21, 2017 awarding treble damages against the Defendant jointly and severally with the remaining Hawthorne Defendants in the amount of $8,054,048.10 under the New Jersey Civil RICO statute, pursuant to N.J.S.A. 2C:41-4(c). In the rider to the order entered by the State Court, the court held that the Defendant's plea of third degree conspiracy to commit theft, coupled with the supplemental documents, was sufficient to show that there was a direct relationship between the Plaintiff's injury and the Defendant's conduct. (Motion for Summary Judgment, Ex. F).

## Discussion

1. **Standard of Review for Summary Judgment**

Summary judgment is appropriate where "…there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). Once the movant shows "…the absence of genuine issue of material fact…", then, the burden is on the non-moving party to set forth specific facts raising a genuine issue of fact for trial. *United States ex. Rel. Romano v. New York Presbyterian*, 426 F. Supp. 2d 174, 177 (S.D.N.Y. 2006); *Celotex Corp v. Catrett*, 477 U.S. 317, 323-24 (1986). On summary judgment, "the inferences to be

drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc*. 369 U.S. 654, 655 (1962).

2. **Res Judicata, Collateral Estoppel and Non-Dischargeability**

The doctrine of *res judicata* or "claim preclusion" finds its basis in the Full Faith and Credit Clause of the United States Constitution. U.S. Const. art. IV., § 1. *Res judicata* prevents a party from re-litigating any issue or defense that was finally decided by a court of competent jurisdiction and which could have been raised or decided in the prior action. *Swiatkowski v. Citibank*, 745 F.Supp. 2d 150, 171 (E.D.N.Y. 2010) (citing *Waldman v. Vill. of Kiryas Joel*, 39 F.Supp. 2d 370, 377 (S.D.N.Y. 1999)). *Res judicata* also applies to judgments obtained by default. *See Kelleran v. Andrijevic*, 825 F.2d 692, 694-95 (2d Cir. 1987). Under the doctrine of *res judicata*, the Court is bound to afford the State Court judgment full faith and credit in the amount of $2,684,682.79 with treble damages, aggregating in the amount of $8,054,048.10.

While the validity of a creditor's claim is determined under state law, the issue of non-dischargeability is a matter of federal law governed by the Bankruptcy Code. *Grogan v. Garner*, 498 U.S. 279, 283-84 (1991) (citing *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156 (1946)). In establishing a cause of action under § 523(a) of the Bankruptcy Code, a creditor may invoke the principles of collateral estoppel, or issue preclusion. *Id*. at 285. The Court must look to state law to determine whether collateral estoppel should apply. Under New York law, collateral estoppel prevents parties from re-litigating an issue when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from re-litigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007).

In determining whether collateral estoppel is appropriate in a given case, two factors are considered. The first factor requires this Court to make an independent determination, based upon the findings made in the pre-petition judgment, whether the elements of § 523(a) have been satisfied. This Court has held previously that the Bankruptcy Court must be able to identify clear and unequivocal findings in the pre-petition judgment which correlate to, and are decisive as to, the elements that must be proven in the § 523(a) non-dischargeable cause of action. *Indo-Med Communities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 29 (Bankr. E.D.N.Y. 2011).

The second factor requires a finding that the Defendant was given a full and fair opportunity to litigate the issue of liability in the prior action. In this case, the second factor has been satisfied. In the State Court action, the Defendant's answer was stricken by the court for reasons that are not included in the record. As a result, judgment was entered against her by default, and the State Court judge went to great lengths to ensure there was a full record regarding the Defendant's particular involvement in the scheme. Even where a judgment is obtained by default, the Second Circuit has held that issue preclusion applies in bankruptcy cases so long as the defendant had the opportunity to appear. *See Kelleran v. Andrijevic*, 825 F.2d at 694. New Jersey State courts would give preclusive effect to the default judgment, and the Bankruptcy Court is obligated to do so as well. Only where judgments are "procured by collusion or fraud or where the rendering court lacked jurisdiction" would an exception apply to the State Court judgment's preclusive effect. *Id*. Because there is no argument or evidence that collusion or fraud was involved in the underlying judgment, it shall be given preclusive effect.

The State Court judgment included a finding that the RICO violations alleged against the Defendant in the State Court complaint were the "but for" cause of the Plaintiff's injury, and the RICO violations were the legal or proximate cause of the Plaintiff's injury. The allegations

contained in count seven of the State Court complaint, which is the only count applicable to the Defendant, include an allegation that the Defendant formed an enterprise within the meaning of NJSA 2C:41:1(c) for the purposes of carrying out theft. The State Court relied on the Defendant's guilty plea of 3rd degree conspiracy to commit theft in rendering its judgment. According to the New Jersey Code of Criminal Justice:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the purpose of promoting or facilitating its commission he:
> (1) Agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> N.J.S.A. 2C:5-2a.

As a result of the plea, the Defendant admitted to possessing the criminal intent to commit theft or assist in the commission of theft, and as a result of the civil judgment, the Defendant's criminal act has been tied to the harm inflicted upon the Plaintiff. The New Jersey RICO Act "makes it a crime for a person to be employed by or associated with 'an enterprise' and to engage or participate or become involved in the business of the enterprise 'through a pattern of racketeering activity.' N.J.S.A. 2C:41-2b and 2c." *State v. Ball*, 141 N.J. 142, 151 (1995). The State Court found that the Defendant violated the New Jersey RICO Act in associating with and participating in an enterprise set up to fraudulently induce the Plaintiff to provide mortgage loans. The plaintiff's funds were pocketed by the Defendant and others. As a result, the Plaintiff never received the first mortgage liens and were constrained to write off the loans, causing significant losses to the Plaintiff.

The Defendant does not dispute the facts of the criminal conviction or challenge its incorporation by reference into the State Court judgment. Instead, the Defendant asserts that the

fundamental principle of bankruptcy is to provide a fresh start to a debtor. The Defendant adds that she was only charged with one count of conspiracy and pleaded guilty to conspiracy to commit theft in an amount less than $75,000, and it would be unfair to enter a non-dischargeability judgment for the entire amount of the State Court judgment, which greatly exceeds $75,000.00.

While the Debtor is correct that bankruptcy is meant to provide debtors with a fresh start, bankruptcy is not a refuge for wrongdoers. Section 523 is among several provisions of the Bankruptcy Code affording protection to creditors who have been defrauded, deceived or intentionally harmed by debtors. The Supreme Court has emphasized that the Bankruptcy Code prohibits debtors from discharging liabilities incurred on account of their wrongful conduct, embodying the basic policy of affording relief only to an "honest but unfortunate debtor." *Cohen v. De La Cruz et. al.*, 523 U.S. 213, 217 (1998) (citing *Grogan v. Garner*, 498 U.S. at 287). In this case, the Debtor does not deny that she pleaded guilty to a felony, which undercuts her equitable arguments. The Defendant's alternate argument that she should only be liable for $75,000 is not supported by the law. The Supreme Court has held that the discharge exception for debt arising from fraud includes treble damages assessed under state law and extends to the entire civil judgment. *Id* at 219, 223.

In a final effort to evade liability, the Defendant cites to the Eighth Circuit opinion *In re Treadwell*, 637 F.3d 855 (8th Cir. 2010), and claims that she is only vicariously liable and did not participate in the underlying fraud. In *Treadwell*, a husband and wife, who were alleged to be partners in a partnership, were sued in bankruptcy court to have a judgment debt declared non-dischargeable. After a trial, the bankruptcy court found in favor of the husband and the wife and dismissed the complaint, and the plaintiff appealed to the Eighth Circuit BAP. On appeal, the

BAP reversed as to the wife, and upheld the findings of the bankruptcy court as to the husband. The plaintiff appealed again, and the Eighth Circuit remanded the matter back to the bankruptcy court to make findings regarding 1) whether the debtors were in fact members of a partnership and 2) whether the husband knew or should have known about the fraud committed by his wife. If they were indeed partners and the husband knew or should have known about the wife's fraud, then the debt would be non-dischargeable as to the husband as well. *Id*. at 864.

While the Eighth Circuit in *Treadwell* found that the Bankruptcy Court neglected to decide the issue of whether the wife's fraud should have been imputed to the husband, the Defendant's misconduct has already been established in this case. The Defendant has pleaded guilty to conspiracy to commit theft, and was found liable under the New Jersey RICO statutes for participating in an enterprise causing damage to the Plaintiff. Her liability is not vicarious, and her involvement in the scheme has been determined. As the Supreme Court has held, conspiracy poses different dangers than the substantive offense, and can present a greater threat to the public than the substantive crime. *Iannelli v. U.S*., 420 U.S. 770, 778 (1975). She cannot now claim she was unaware of the wrongful acts of the Hawthorne Defendants because she is a co-conspirator with respect to the theft of the Plaintiff's funds.

3. **Section 523(a)(4)**

   *a. Defalcation While Acting in a Fiduciary Capacity*

Section 523(a)(4) provides for an additional exception to the discharge of a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In order to rule on this count, the meaning of "fiduciary capacity" requires analysis. Alternatively, the Court must determine whether "larceny" or "embezzlement" applies to the factual findings in this case.

For the Court to grant relief under the first part of this section, the underlying record must be sufficient to establish that the debtor committed fraud or defalcation while acting in a fiduciary capacity. *Zohlman v. Zoldan*, 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998). Because there is no evidence that the Defendant owed a fiduciary duty to the Plaintiff, the debt cannot be excepted from discharge based on fraud or defalcation while acting in a fiduciary capacity.

In non-dischargeability actions, a fiduciary relationship is construed narrowly and generally exists as a result of a 'technical' or 'express' trust rather than a constructive or implied trust. *Zohlman v. Zoldan*, 226 B.R. at 773. To determine whether such a fiduciary relationship exists, the Court looks to state law. *Id*. at 773. The Plaintiff asserts that a fiduciary relationship existed between Hawthorne Capital and the Defendant because she was an attorney licensed in the State of New York and she acted in a fiduciary capacity for the criminal enterprise.

It is well-settled that an attorney acts as a fiduciary to his or her client. *In re Hayes*, 183 F.3d 162 (2d Cir. 1999), *United Jersey Bank v. Kensey,* 306 N.J. Super 540, 552- 53 (App. Div.1997)*, cert. denied*, 153 N.J. 402 (1998). Nevertheless, the Plaintiff offers no support for its position that the Defendant, in her capacity as attorney for Hawthorne, owed a fiduciary duty to the Plaintiff. The record reflects that while conscious misconduct was present, there was no fiduciary relationship between the Plaintiff and the Defendant during the commission of the wrongful acts. The fact that the Defendant owed a fiduciary duty to Hawthorne does not serve to extend such duty to the Plaintiff. Therefore, summary judgment is denied as to the claim of fraud or defalcation.

### b. *Embezzlement, Larceny*

The Plaintiff also asserts that the State Court judgment should be exempted from discharge under section 523(a)(4) because the Defendant either embezzled the Plaintiff's funds or committed larceny. The question of what constitutes embezzlement and larceny within section 523(a)(4) is a question of federal law. *In re Scheller*, 265 B.R. 39, 53 (Bankr. S.D.N.Y. 2001) (citing *Great American Insurance Co. v. Graziano (In re Graziano)*, 35 B.R. 589 (Bankr. E.D.N.Y. 1983)). Larceny is the (1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with the intent to convert the property. *Id.* at 594.

Embezzlement involves somewhat similar elements requiring (1) entrustment to the debtor of (2) property (3) of another (4) which the debtor appropriates for his or her own use (5) with intent to defraud. *Moonan v. Bevilacqua (In re Bevilacqua)*, 53 B.R. 331, 333-34 (Bankr. S.D.N.Y. 1985). "Larceny does not differ from embezzlement except with respect to the manner in which the funds or property come into possession of a party." *In re Graziano*, 35 B.R. at 594. A debtor need not have been a fiduciary to commit larceny or embezzlement. *In re Bevilacqua*, 53 B.R. at 334. The Supreme Court recently rendered a decision regarding Bankruptcy Code § 523(a)(4), and opined that embezzlement requires a showing of wrongful intent. *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 273 (2013) (citing *Neal v. Clark*, 95 U.S. 704, 709 (1878)).

In this case, there are sufficient findings by the State Court to conclude that the debt falls within the larceny exception to discharge. The Defendant was convicted of conspiracy to commit theft based on her guilty plea. The Defendant's conviction emanates from her involvement in a fraudulent scheme to sell mortgages to the Plaintiff and other institutions, and to pocket the proceeds without satisfying the original mortgagees. Based on the written agreement between Hawthorne and the Plaintiff, it does not appear that the Defendant was ever entrusted with the Plaintiff's funds. She was not a principal of Hawthorne and the agreement does not include any

reference to her obligations with respect to the Plaintiff's funds. (Motion for Summary Judgment, Ex. G).  Rather, the Plaintiff's funds were entrusted with Hawthorne, which funds were to be used to pay off existing mortgages.  Instead, the Hawthorne Defendants, including the Defendant, misappropriated the funds for their own use and benefit, and the State Court found that this was done with fraudulent intent. Based on this record, there is sufficient evidence to find that the Defendant committed larceny.  In her defense, the Defendant points out that she only pleaded to a lesser charge of conspiracy to commit theft of an amount less than $75,000. Disputing the dollar amount involved in the criminal plea does not change the nature of the offense or make only a portion of the debt non-dischargeable. The requirements of section 523(a)(4) have been satisfied to fulfill the exception for discharge under larceny as a matter of law. Therefore, summary judgment is granted in favor of the Plaintiff as to the second cause of action.

4. **Section 523(a)(6)**

In the third cause of action, the Plaintiff seeks summary judgment on the basis that the debt is excepted from discharge for "willful and malicious injury by the debtor to another entity under section 523(a)(6). In order to satisfy the "willful" requirement under the statute, there must be a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 62-63 (1998). In particular, the actor must "intend the consequences of an act" rather than merely "the act itself." *Id*. Therefore, actions arising merely from negligent or reckless conduct do not satisfy the "willful" standard.

Here, the Defendant correctly points out that the "Plaintiff is required to prove a deliberate or intentional act or an intentional manner." (Opposition to Summary Judgment Motion, p. 3).  The record before the Court shows that the Defendant intended the consequences

of her actions, as she pleaded guilty to conspiracy to commit theft. As set forth above, conspiracy requires that the defendant agree with another that one or both will commit the act, or that the defendant aid another in committing the criminal act. Entering into an agreement to commit larceny or to aid others in larceny are both deliberate acts for the purposes of section 523(a)(6). This Court holds that the findings in the State Court judgment, along with the Defendant's guilty plea of conspiracy to commit theft, are sufficient to satisfy the "willfulness" requirement of section 523(a)(6).

The final requirement under section 523(a)(6) is that the Defendant's willful actions be malicious. Second Circuit jurisprudence defines "malice" under 523(a)(6) as conduct that is "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996). Malice "may be implied by 'the acts and conduct of the debtor in the context of surrounding circumstances' and 'when anyone of reasonable intelligence knows that the act in question is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another.'" *Yash Raj Films (USA), Inc. v. Akhtar (In re Akhtar)*, 368 B.R. 120, 130-31 (Bankr. E.D.N.Y. 2007). Even in the absence of the terms "malicious" or "malice" in the pre-bankruptcy decision, the bankruptcy court can infer from prior factual findings whether the debtor's conduct was "malicious" sufficient to satisfy section 523(a)(6). *See In re Stanley*, 66 F.3d 664, 668 (4th Cir. 1995) (noting that a particular debtor's knowledge may be proved by circumstantial evidence and implied malice).

By admitting to conspiracy to commit the crime of theft, the Defendant has exhibited conduct that was wrongful and without just cause, thus satisfying the element of malice. It is without question that anyone of reasonable aptitude would recognize that committing theft is

contrary to commonly accepted duties and would cause harm to the Plaintiff and its customers. The Defendant pleaded guilty to violating provisions of N.J.S.A. 2c:5-2 and 2c:20-3. Her criminal conviction by plea is conclusive proof of her intent to harm the Plaintiff, and the Defendant is collaterally estopped from re-litigating the issue. *See Grayes v. DiStasio*, 166 A.D.2d 261, 262–63, 560 N.Y.S.2d 636, (N.Y. App. Div. 1990). Thus, the Defendant's conduct has met the requirements under section 523(a)(6) to disqualify the debt from discharge. Therefore, summary judgment is granted in favor of the Plaintiff on the third cause of action.

5. **Section 523(a)(2)(A)**

Bankruptcy Code section 523(a)(2)(A) allows an exception from discharge for "any debt… for money, property… to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). A movant can satisfy the elements by establishing at least one of the three types of fraud. *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 260 (Bankr. S.D.N.Y. 2000).

A false pretense "is the practice of any scam, scheme, subterfuge, artifice, deceit or chicane in the accomplishment of an unlawful objective" on behalf of the defendant. *Id.* at 261. The elements necessary to establish that a debt was obtained through false pretenses include. "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property or credit to the defendant." *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).

Nevertheless, despite the Defendant's guilty plea, there are insufficient facts in the record at the summary judgment stage to show that the Defendant's acts, while complicit, rose to a level of a knowing and willing promotion of Hawthorn's misrepresentation to the Plaintiff as required by 523(a)(2)(A).   Similarly, there is insufficient evidence in the record to establish that the Defendant made a false or misleading statement with the intent to deceive the Plaintiff as required under the section 523(a)(2)(A) exceptions for false representation and actual fraud.  Therefore, summary judgment as to the first count is denied.  Because the Court has ruled in favor of the Plaintiff on the second and third count, there is no need for a trial on the first count.

*Conclusion*

For the reasons stated herein, the Court grants the Plaintiff's motion for summary judgment and the full amount of the State Court judgment shall be excepted from discharge for larceny under section 523(a)(4), and willful and malicious conduct under section 523(a)(6). Summary judgment is denied with respect to the first cause of action under section 523(a)(2)(A).

An order and judgment consistent with this memorandum decision shall be entered forthwith.



**Dated: Central Islip, New York**
**January 24, 2018**

**Robert E. Grossman**
**United States Bankruptcy Judge**